***********
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is Crum Forster/U.S. Fire Insurance Company.
4. The employee's average weekly wage is $749.65.
5. The employee sustained an injury on or about September 10, 2004.
The injury arose out of and in the course of his employment and is compensable.
7. The parties Stipulated into evidence as Stipulated Exhibit # 1, Pre-Trial Agreement, as modified and initialed by the parties, and as referenced by the Table of Contents, to include North Carolina Industrial Commission forms and medical records.
 ***********
Based upon all of the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff sustained an admittedly compensable work-related electrical shock on September 10, 2004, while attempting to replace the ballast in an overhead light fixture. After being knocked loose from the light fixture by a co-employee, Plaintiff fell seven to ten feet to the ground landing on his left side.
2. Plaintiff was initially treated on September 10, 2004 at Hart Industrial Clinic where he was diagnosed with an electrical burn through his right hand to his back, lacerations, abrasions and contusions. The electricity entered Plaintiff's body through the right ring finger and exited through his back. Sutures were applied to the laceration above Plaintiff's left eye and to the exit wound in the left scapular area. Plaintiff was referred to a hand specialist and advised to return to Hart Industrial Clinic on an as needed basis. *Page 3 
3. On the same date, September 10, 2004, Plaintiff was seen by Dr. Mark R. McGinnis of Hickory Orthopedic Center. Dr. McGinnis diagnosed small electrical burns of the right ring finger and small finger with abrasions of the left elbow, laceration of the left lateral eyebrow and very superficial tiny electrical burns of the tips of the fingers of the left hand. Dr. McGinnis dressed the right ring and small finger and prescribed pain medication.
4. On September 17, 2004, Dr. McGinnis released Plaintiff to return to light duty work with limited use of both hands.
5. To expedite treatment and decrease the chance of significant scarring with potential flexion contractures, on September 27, 2004, Dr. McGinnis performed a full thickness skin graft of the right ring finger with a total surface area of 3 square centimeters and a full thickness skin graft of the right small finger with a total surface area of approximately 1.2 square centimeters.
6. On October 7, 2004, Dr. McGinnis released Plaintiff to one-handed employment.
7. On November 18, 2004, Dr. McGinnis noted that Plaintiff was doing fairly well with a little bit of tightness from the palmar scar of the right ring finger. Plaintiff had no significant tenderness on palpation of the scar tissue. Dr. McGinnis noted that Plaintiff may have a problem with the right ring finger with regard to a tightness or slight flexion contracture of the DIP joint. Dr. McGinnis assigned a 2% permanent partial impairment rating of the left ring finger and a 0% permanent partial impairment rating of the small finger. Although Dr. McGinnis referenced the left fingers in his ratings, it appears clear that this was a typographical error as the injuries and skin graft were to the right fingers. Dr. McGinnis indicated that Plaintiff could continue to work with no restrictions. Plaintiff was advised to follow up on an as needed basis. *Page 4 
8. Plaintiff returned to work at his pre-injury employment and pre-injury wages on or about November 1, 2004. Defendants paid temporary total disability benefits during the period Plaintiff was out of work. Plaintiff had a new position with the Defendant-Employer as of the date of the hearing before the Deputy Commissioner, and was earning the same wages. Plaintiff had requested or bid for this change to the new position with Defendant-Employer. Plaintiff's new job with Defendant-Employer was not due to his work related injury.
9. Upon the motion of Plaintiff, Deputy Commissioner Rowell Ordered Defendants to provide evaluations and follow-up treatment for Plaintiff through neuropsychiatrist, Dr. C Thomas Gualtieri, and orthopedic spine specialist, Dr. Jeffery A. Knapp.
10. Dr. Gualtieri was deposed on May 4, 2006. He opined that the problems Plaintiff reported of pain, soreness, tingling, headaches, back pain and mild cognitive impairment were expected with an electric shock injury. Dr. Gualtieri opined that Plaintiff's problems "are likely to resolve" during the second year following the electric shock injury. According to Dr. Gualtieri, by resolve, he meant "it's no longer an active problem. It's not something that the patient continues to complain of or worry about or seek help over."
11. Despite Dr. Gualtieri's opinion that Plaintiff's problems would likely resolve in approximately two years after the injury, he gave Plaintiff a 15% whole person impairment rating. According to Dr. Gualtieri, this rating was based on Plaintiff's initial visit of November 8, 2005. Dr. Gualtieri based the whole person rating on the AMA Guidelines.
12. Dr. Guatieri also opined that ideally, a patient should not be rated until two years after a mild brain injury, since 99 times out of 100, if the rating had waited until two years after the accident, the disability rating would be lower. *Page 5 
13. Upon Order of the Full Commission on December 4, 2007, Plaintiff was ordered to return to Dr. Gualtieri for a follow-up re-evaluation since he was more than two years post injury. Based on the January 24, 2008 stipulated report of Dr. Guaitieri, Plaintiff continues to have persistent problems with headaches and muscle spasms. Plaintiff reported problems with irritability, temper outbursts, personality change and continuing memory problems. Plaintiff's objective testing showed a sharp decline in his neurocognitive performance, but his subjective ratings questionnaire was almost identical to scores from two years earlier. Tests showed "no evidence for exacerbation and malingering." Dr. Gualtieri recommended a brain MRI with and without contrast and treatment for Plaintiff's symptoms, including depression. Dr. Gualtieri recommended that Plaintiff return to him for several more visits and every year for re-evaluation.
14. Dr. Gualtieri noted in his January 24, 2008 re-evaluation report that he gave Plaintiff a 15% whole person impairment rating two years before, related to memory problems and headache from concussion, but he did not discuss changing the rating up or down. The Full Commission finds based on the greater weight of the evidence that Plaintiff's neurocognitive condition has not improved since his 2005 evaluation; therefore, the 15% whole body impairment rating given by Dr. Gualtieri has not decreased.
15. Plaintiff has sustained permanent injury to his brain, an important internal organ of the body. There is no subdivision under N.C. Gen. Stat. § 97-31 providing for compensation for the permanent injury to Plaintiff's brain, other than equitable compensation under N.C. Gen. Stat. § 97-31(24).
15. Pursuant to the order of the Deputy Commissioner, Dr. Jeffrey Knapp, an orthopedic surgeon with Hickory Orthopedic Center, the same facility where Dr. McGinnis works, evaluated Plaintiff. Dr. Knapp has a spine fellowship. Dr. Knapp first saw Plaintiff on *Page 6 
October 14, 2005. On examination Plaintiff had a lot of interscapular pain with neck motion, mostly along the right periscapular area. Motor strength was normal. Dr. Knapp diagnosed a soft tissue injury and referred Plaintiff for an MRI. Following the normal MRI, Plaintiff returned to Dr. Knapp on November 30, 2005. At that time, Dr. Knapp referred Plaintiff to physical therapy. At his deposition, Dr. Knapp testified that, as there were no objective signs of injury, he could not rate Plaintiff solely for pain. He therefore assessed Plaintiff with a 0% permanent partial impairment rating to the back as of the time of the last visit. It appears, however, that Plaintiff continued to complain of back pain and that he would benefit from physical therapy as recommended by Dr. Knapp.
16. Plaintiff has also been seen for a second opinion on his ratings with Dr. Maher Habashi. Dr. Habashi assessed a 5% permanent partial impairment rating to Plaintiff's back, a 5% permanent partial impairment rating to the arm, a 5% permanent partial impairment rating to the right hand and a 30% permanent partial impairment rating to the right ring finger.
17. The ratings of Dr. McGinnis, as treating physician, are accorded more weight than the ratings of Dr. Habashi. With respect to Plaintiff's back, which Dr. McGinnis did not treat, after review of the evidence, the Full Commission gives greater weight to the rating of Dr. Knapp over that of Dr. Habashi. Both doctors, however, noted continuing back pain problems related to Plaintiff's injury, which would warrant further medical treatment.
18. Based upon the greater weight of the medical evidence, Plaintiff has proven that he has sustained permanent injury to his brain resulting from his compensable September 10, 2004 injury.
19. Plaintiff needs continuing medical treatment for his compensable injuries, including future medical treatment by Dr. Gualtieri and by Plaintiff's family practice physician *Page 7 
as needed for symptomatic treatment, including pain for so long as such treatment is reasonably required to effect a cure, provide relief and/or lessen Plaintiff's disability.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 10, 2004 Plaintiff suffered admittedly compensable injuries by accident as a result of electric shock and a fall from a height of seven to ten feet. N.C. Gen. Stat. §§ 97-2(6).
2. As a result of his September 10, 2004 injury by accident, Plaintiff sustained a 2% permanent partial impairment rating to the right ring finger, a 0% permanent partial impairment rating to his little finger and permanent injury to his brain, an important internal body organ. N.C. Gen. Stat. §§ 97-31(4) and 97-31(24).
3. Plaintiff has sustained no permanent partial impairment rating to his back at this time as a result of the September 10, 2004 accident. N.C. Gen. Stat. § 97-31(23).
4. As a result of the permanent injury to his brain resulting in memory problems and headache from concussion, which Dr. Gualtieri rated as a 15% permanent partial impairment of the whole body, Plaintiff is entitled to an equitable award under N.C. Gen. Stat. § 97-31(24).
5. Plaintiff is entitled to have Defendants provide all medical treatment necessitated by his September 10, 2004, compensable injuries, including future medical treatment by Dr. Gualtieri and by Plaintiff's family practice physician as needed for symptomatic treatment including pain, for as long as such examinations, evaluations and treatments may reasonably be *Page 8 
required to effect a cure, to provide relief and/or to tend to lessen the period of disability. N.C. Gen. Stat. §§ 97-25 and 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff .5 weeks of benefits for the 2% rating to the right ring finger or a total of $249.90.
2. In the discretion of the Full Commission, Defendants shall pay to Plaintiff, equitable compensation in the amount of $10,000.00 for permanent injury to his brain, an important internal body organ.
3. Twenty-five percent of the above compensation awarded to Plaintiff shall be deducted and paid to Plaintiff's attorney as counsel fees.
4. Defendants shall pay all medical expenses incurred or to be incurred by Plaintiff in the future as a result of his compensable injuries according to procedures adopted by the Industrial Commission.
 Defendants shall pay the costs. *Page 9 
This the ___ day of September 2008.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/___________________ DANNY L. McDONALD COMMISSIONER
S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1